# EXHIBIT "A-3"

Filed
4/4/2022 8:26 AM
Anne Lorentzen
District Clerk
Nueces County, Texas

2022DCV-1098-B

CAUSE NO. _____

| | | |
|---|---|---|
| CHARLES L. FOSTER, III, | § | IN THE DISTRICT COURT |
| | § | |
| vs | § | |
| | § | _____ JUDICIAL DISTRICT |
| WILMINGTON SAVINGS FUND | § | |
| SOCIETY, FSB, PHH MORTGAGE- | § | |
| REVERSE MORTGAGE AND | § | |
| WILLIAM ATTMORE | § | NUECES COUNTY, TEXAS |

## ORIGINAL PETITION, AND VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Charles L. Foster, III, Plaintiff, and files this his Original Petition, Application for Temporary Restraining Order, and Application for Temporary Injunction, complaining of Wilmington Savings Fund Society, FSB, PHH Mortgage—Reverse Mortgage, and William Attmore, and for cause of action would show this Court as follows:

### I.
### DISCOVERY AND CLAIMS

1.01    Discovery should proceed under Level III, TEX. R. CIV. P. 190. Pursuant to TEX. R. CIV. P 47, the paragraphs below set forth a claim for relief and statement of the causes of action sufficient to give fair notice of the claims. Moreover, the damages sought are within the jurisdictional limits of this Court. The Plaintiff seeks monetary relief (excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs) of over $1,000,000 as well as non-monetary relief in the form of temporary restraining and injunctive relief.

### II.
### NOTICE OF INITIAL DISCLOSURES DUTY

2.01    Defendants are given notice of their obligation to provide disclosures pursuant to TEX. R. CIV. P. 194.2.

Copy from re:SearchTX

## III.
### PARTIES

3.01    Plaintiff, Charles L. Foster, III, is the son of the deceased, Charles L. Foster, Jr., he is an individual resident of Port Aransas, Nueces County, Texas.

3.02    The Defendant, Wilmington Savings Fund Society, FSB is a foreign corporation, a federal savings bank headquartered in the State of Maryland, but doing business in Texas, and who is required to maintain a registered agent for service of process but does not. The Defendant Wilmington Savings Fund Society, FSB, claims to be owner of a note and mortgage originally owned by Genworth Financial. It may be served with process by serving a copy of this petition and citation upon the Secretary of State of the State of Texas, at 1019 Brazos Street, Austin Texas, for mailing to James D. Nesci, at Wilmington Trust FSB, 520 Madison Avenue, 33rd Floor, New York, NY 10022-4213.

3.03    The Defendant PHH Mortgage—Reverse claims to be the mortgage servicer for Wilmington Savings Fund Society, FSB. The Defendant PHH Mortgage—Reverse is a New Jersey corporation located on 1 Mortgage Way, Mount Laurel, New Jersey, 08054. It does extensive business in Texas, and it has a registered agent for service of process in Texas. It may be served with process by serving a copy of this petition and citation upon its registered agent for service of process, Corporation Service Company dba CSC Lawyers INCO, 211 East 7th Street, Suite 620, Austin, Texas 78701.

3.04    The Defendant, William Attmore, claims to be attorney for PHH Mortgage—Reverse. He may be served with process by serving a copy of this petition and citation upon him at ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC, 5601 Executive Drive, Suite 400, Irving Texas 75058.

Copy from re:SearchTX

## IV.
### JURISDICTION AND VENUE

4.01    This Court has jurisdiction over the parties and subject matter. Moreover, venue is both mandatory and proper in that all or a substantial part of the cause of action accrued in Nueces County, Texas, and the property at issue in this case is in Nueces County, Texas.

## V.
### FACTS

5.01    Charles L. Foster, Jr., who is now deceased, entered into a reverse mortgage with Genworth Financial Home Equity Access, Inc. ("Genworth Financial") on or about July 26, 2010. In pursuit thereof, Charles L. Foster, Jr., signed a note and deed of trust along with a series of other documents on July 26, 2010. The original amount of the principal was $384,417.86. Naturally, the note bore interest. Purportedly through assignment, sometime subsequent to that an entity named Cascade Funding Mortgage Trust—HB2 was owner and holder, and currently, presumably again through some assignment, Wilmington Savings Fund Society, FSB claims to be owner and holder of the note and reverse mortgage. Similarly, there have been a series of mortgage servicers. At one point in time, Reverse Mortgage Solutions, Inc. was the servicer of the mortgage. Currently, however, the entity known as PHH Mortgage—Reverse claims to be the mortgage servicer.

5.02    The note is secured by a reverse mortgage on property located in Port Aransas, Nueces County, Texas. Specifically, the property is known as 440 Bahia Mar, Port Aransas, Nueces County, Texas. The legal description of the property is known as the surface estate only in and to Lot Thirty-Eight (38), Block One (1), Island Moorings Unit 1, City of Port Aransas, Nueces County, Texas, as shown by the map or plat thereof recorded in Volume 48, page(s) 142 of the map records of Nueces County, Texas. The Defendant Wilmington Savings Fund Society, FSB now claims to be owner of the note and deed of trust. The Defendant named PHH Mortgage—

Copy from re:SearchTX

Reverse now claims to be mortgage servicer. PHH Mortgage—Reverse claims that as of February 28, 2022, the amount of $803,418.49 is owed. The Plaintiff has no way of determining at this point in time whether that amount is true. However, the market value of 440 Bahia Mar, Port Aransas, Texas is way in excess of the claimed amount due. Based upon current market conditions, the property is valued at between $2,004,219 and $2,280,663.[1] Accordingly, there is a large amount of equity, and the lender enjoys a large amount of security, since the market value to loan value is around 2.5 times. This was not, however, always the case. The reason why Wilmington Savings Fund Society, FSB enjoys such a situation is because of the time, labor, and investment of the Plaintiff, Charles Foster, III.

5.03    The original debtor and owner of the property in question, Charles L. Foster, Jr., died on November 7, 2018. At the time of Charles Foster, Jr.'s death, the market value of the property was significantly reduced because of the damage it suffered from Hurricane Harvey which hit Port Aransas particularly hard in August 2017. Although the precise market value of the damaged property cannot be determined exactly, it was within the range of probability in the mind of the parties that the market value of the property—as damaged, and considering the market at the time shortly after Hurricane Harvey, and considering the uncertainty of the amount of insurance proceeds—was less than the amounts outstanding under the reverse mortgage. Had the holder of the note and mortgage foreclosed on the property, it might very possibly have suffered a loss. It also would have been faced with the problem of obtaining insurance proceeds, or negotiating with and settling or suing the insurance company, of engaging contractors, of supervising their work, and of making sure that the repairs were properly done on the property, all at its own expense and time. It also would have been responsible for maintaining the property and making sure that it was

---

[1] *See* **Exhibit A** (Affidavit of Charles Foster, III).

Copy from re:SearchTX

secure under the circumstances. Neither the owner of the note or the mortgage servicer were geared to perform such a service.

5.04    Charles L. Foster, Jr., died testate, and his will was filed for probate in Cause No. 2019-PR-00108-1, *In re Estate of Charles L. Foster, Jr.*, which case remains pending in the County Court at Law No. 1. The owner and lender (presumably Genworth Financial) through its mortgage servicer, Reverse Mortgage Solutions, Inc., had knowledge of the death of Charles L. Foster, Jr., and the appointment of Craig K. Foster, as Executor inasmuch as it made an appearance in the probate court. Reverse Mortgage Solutions is represented in the probate case by Cheyenne M. Zoakaie, at 701 N. Post Oak Rd., Suite 205, Houston, Texas 77024. That case remains pending. Accordingly, Wilmington Savings Fund Society, FSB, PHH Mortgage—Reverse, and attorney William Attmore had notice or, in the exercise of reasonable diligence, should have had  notice of the same as alleged successors in interest to Reverse Mortgage Solutions, Inc.

5.05    One of the sons of the Decedent, Craig K. Foster, was appointed executor of the Estate of Charles L. Foster, Jr., deceased on August 6, 2019. He appointed as resident agent, attorney Charles W. Zahn, Jr., 2106 State Highway 361, Suite C, Port Aransas, Texas, 78373 to accept service of process in all proceedings or actions.

5.06    Because the executor of the Estate determined the property as damaged by hurricane Harvey presented both the Estate of Charles L. Foster, Jr. and the reverse mortgage lender (at the time the servicer was Reverse Mortgage Solutions), the Executor engaged in discussions with Reverse Mortgage Solutions and corresponded with it and in such correspondence stated as follows:

> As executor of the estate of Charles L Foster, Jr, I wish to confirm that the estate of Charles L Foster, Jr (decd) has no disposition or material possession of the decedent's previous primary residence at 440 Bahia Mar in Port Aransas, Tx. Should RMS mortgage, or it's [sic] assigns including by brother Charles L Foster III, wish to use the insurance claim

Copy from re:SearchTX

funds issued to repair, refurbish, sell, invest in or dispose of this asset, the estate has no financial interest or responsibilities of any sort in relation to such efforts, activity or transactions.

Therefore, since RMS asked for my approval to release TWIA insurance claims funds to IRAC, LLC as the contractor doing the repairs that my brother Charles Foster is overseeing for the purpose of financing the purchase of the property, please accept this acknowledgement of the release of insurance funds in your possession for that purpose.

Please confirm that all future interest and/or responsibilities regarding the property at 440 Bahia Mar, Port Aransas, TX are within the sole discretion of Charles L Foster, III, and are in no way a part of the Estate of Charles L Foster, Jr. (deceased) inasmuch as other heirs have no further interest in or association with the property, nor does any current equity exist in that property regarding the estate of my deceased father.[2]

5.07    Pursuant to this decision between RMS Mortgage and the Estate of Charles Foster, Jr., several things happened. First, RMS Mortgage essentially agreed that Charles Foster, III had stepped into the shoes of the Estate of Charles Foster, Jr. He was thus the party with at least equitable interest in the 440 Bahia Mar. Second, funds were released and used to repair the property, which increased the value of the property, which was to the benefit of RMS Mortgage as well as the equitable owner, Charles Foster, III. Third, an agreement was entered into between Charles Foster, III and RMS Mortgage, wherein Charles Foster, III agreed to undertake the work needed to undertake the repair of the property, which included: (i) communicating with insurance company, (ii) engaging and communicating and supervising the work of contractors, (iii) maintaining the security of the property, (iv) engaging or working with professionals to advance the interests of the property or insurance proceeds. Charles Foster, III did not agree to do this work for RMS Mortgage for free, he agreed to do it with the understanding that: (i) he would do that work until the property was repaired, and (ii) he would be given a reasonable time after such repairs were accomplished to put the property on the market and sell it (and repay the debt owed on the property) or he would refinance the debt on the property (and pay off the current debt) with such

---

[2] *See* **Exhibit A** (Affidavit of Charles Foster, III).

Copy from re:SearchTX

refinancing. In the interim, RMS mortgage agreed to defer any foreclosure proceedings until the repairs were made and Charles Foster, III was given a reasonable time either to refinance the property after its repair or to list the property and sell it after it was repaired. The current efforts of the Defendants completely ignores this agreement he had with the predecessor mortgage servicer and mortgage owner and threatens his equitable interest in 440 Bahia Mar that Charles Foster, III obtained by the agreement between the Estate of Charles Foster, Jr. and RMS Mortgage and the agreement he himself had with RMS Mortgage.

5.08    If the property is sold at public auction, the Plaintiff will be extremely prejudiced. First, he will have been deceived by the Defendants or their predecessors into expending a tremendous amount of time and human resources in repairing the property with the understanding that he would be permitted a reasonable time thereafter either to refinance it with another lender or to list it for sale and sell it and thereby paying off the mortgage and obtaining the large amount of equity in the property. Second, the trustee's sale will likely not obtain the amount that could be obtained for the property in an orderly sale by a realtor marketing the property. Third, it is possible that the equitable interest he has in the property will be extinguished and the Defendants will claim the benefits of both his efforts and the fortunes of the market.

5.09    During the time that the note and reverse mortgage were owned by Reverse Mortgage Solutions, Inc., the property was damaged as a result of storms. Charles Foster, III cooperated with Reverse Mortgage Solutions, Inc. and its representatives to: (a) obtain windstorm insurance that covered the property (including suing TWIA) to obtain the maximum amount of recovery, (b) once the funds were received to contract with contractors to undertake repairs of 440 Bahia Mar with such monies, and (c) using his own money—in addition to countless hours of his own to put the property in a condition to where it could be re-financed or sold on the market. During this time,

Copy from re:SearchTX

the market values at Port Aransas are booming. The Plaintiff Charles Foster, III performed these services for the benefit of Reverse Mortgage Solutions, Inc., with the understanding that they would forego foreclosure of the property during such repair process and that they would forego any foreclosure of the property a reasonable time after such repairs were made so as to allow the property to be refinanced (at which time Reverse Mortgage Solutions, Inc. would be paid off in full), or allow the property to be listed and sold on the open market for an amount way in excess of the amount owed (at which time Reverse Mortgage Solutions, Inc. would be paid off in full). Accordingly, Reverse Mortgage Solutions, Inc., the predecessor in interest to Wilmington Savings Fund Society, FSB, and therefore also the successor in interest Wilmington Savings Fund Society, FSB and the mortgage servicer PHH Mortgage—Reverse are bound by the representations of their predecessor. Reverse Mortgage Solutions, Inc. promised it would forebear foreclosure until a reasonable time after the repairs were made to allow either the refinance of 440 Bahia Mar or the listing and sale of 440 Bahia Mar. The Plaintiff reasonably relied upon such promises, substantially relied on to their detriment on such promises. Defendants also promised to put these promises in writing, but delayed doing so.[3] As a consequence, Wilmington Savings Fund Society, FSB, and the mortgage servicer PHH Mortgage—Reverse are estopped from foreclosing on 440 Bahia Mar until after such a time as the property is repaired and the Plaintiff has been given a reasonable time to refinance the property or list the property and sell it in the marketplace.

5.10     Although Plaintiff's attorney tried to correspond by email with the lawyer for the mortgage servicer, he has not responded.[4] This indicates an intent not to cooperate with the Plaintiff. Accordingly, *ex parte* relief is necessitated given the imminency of the trustee's sale, and the equity of the parties.

---

[3] *See* **Exhibit A** (Affidavit of Charles Foster, III).
[4] *See* **Exhibit B** (Affidavit of Greenwell).

Copy from re:SearchTX

## VI.
### CLAIMS

### A.
### DEFECTIVE NOTICE

6.01     The Defendants failed to give proper notice of default and intent to accelerate, notice of acceleration, and notice of trustee's sale to the successor in interest to the original borrower to the Plaintiff. The notice of default and notice of intent to accelerate, the notice of acceleration, and the notice of trustee's sale were sent to a person who was deceased and were not sent to the representative of the original borrower, whose identity and address was known, or should have been known, to the mortgage servicer and the lawyer representing the mortgage servicer. Accordingly, the notices are defective and of no effect. The Defendants have both violated Texas law and the terms of the parties' agreement, specifically, the note and security instruments. The Defendants knew or should have known that the only party claiming an interest in any equity in the property 440 Bahia Mar was Charles Foster, III, and he was not included in any notices of default, notices of intent to accelerate, notice of acceleration or notices of foreclosure.

### B.
### BREACH OF CONTRACT

6.02     The foreclosure is in breach of contract that the Plaintiff had with the Defendants or their predecessors, namely, that, in exchange for his work in overseeing the repairs of the property 440 Bahia Mar, that he would be given a reasonable time after such repairs were completed either to refinance the property or list the property and sell it (and thereby pay off any debt on the property). The loss to the Plaintiff if the foreclosure is not stopped is more than $1,000,000. This equity would not exist but for the combination of the Plaintiff's work and the current market.

Copy from re:SearchTX

## C.
### PROMISSORY ESTOPPEL

6.03    The Defendants additionally or alternatively should be estopped by the principles of promissory estoppel from foreclosing on this property inasmuch as their or their predecessors made promises to Charles Foster, III, the son of the Decedent, that if he cooperated with them in obtaining insurance proceeds on the property, and managing the repair of the property, that they would forego foreclosure of the property until after the property was repaired and after Charles Foster, III was given a reasonable time either to refinance the property or to sell the property.  The property is close to being repaired and close to either being subject to refinance or being listed on the market to be sold. The market value of the property currently exceeds, by a vast amount, the obligations claimed to be owed. The Notice of Substitute Trustee's Sale violates the express promises of the mortgage servicer.[5]

## D.
### UNJUST ENRICHMENT

Additionally, Plaintiff would show that the disregard of his contribution and efforts, and his expectation to obtain the benefit of any equity increase arising from his efforts and the market and provide it to the Defendants would unjustly enrich them. Such a benefit would be obtained at the expense or detriment of Plaintiff.

## VII.
### APPLICATION FOR TEMPORARY RESTRAINING ORDER
### AND TEMPORARY INJUNCTION

7.01    Accordingly, Plaintiff requests this Court to enter a temporary restraining order *ex parte* and temporary injunctive relief enjoining Wilmington Savings Fund Society, FSB, its mortgage servicer, PHH Mortgage—Reverse, William Attmore, and any other attorney at the law firm of

---

[5] *See* **Exhibit A** (Affidavit of Charles Foster, III).

Copy from re:SearchTX

ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC, any of the substitute trustees, including Arnold Mendoza, Jo Woolsey, Bob Frisch, Sandra Mendoza, Susan Sandoval, Leslye Evans, or Alexis Mendoza to conduct any foreclosure sale on the property on April 5, 2022, or any date thereafter, until the Plaintiff is given a reasonable time to complete the repairs on the property and to either refinance the property or list the property for sale and sell the property. After such reasonable time, the Defendants must provide proper notice under the Texas Property Code and upon further order of the Court.

7.02    Plaintiff's request for a temporary restraining order and temporary injunction is authorized under TEX. CIV. PRAC. & REM. CODE § 65.011(1), (3), and/or (5) in that: (i) the Plaintiff is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant, (ii) the Plaintiff is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions, and/or (iii) parable injury to real or personal property is threatened, irrespective of any remedy at law.

7.03    It is probable that the Plaintiff will recover from the Defendants after a trial on the merits because he can establish that the Defendants are contractually prevented or through promissory estoppel estopped from foreclosing on the property until after repairs have been made on the property and the Plaintiff is given reasonable time to refinance the property or list the property and sell it. Moreover, the notices provided are ineffective under the law, and so will have to be re-issued after a reasonable time to refinance or list and sell the property has elapsed.

7.04    If the Plaintiff's application is not granted, harm is imminent because the foreclosure will occur as scheduled on April 5, 2022, as threatened by the wrongful notices, in breach of the contracts that gave him rights in the property, his equitable interest in the property, and his rights

Copy from re:SearchTX

to refinance or list the property. Moreover, counsel for the Defendants has not answered inquiries by the Plaintiff's counsel.

7.05    If the Plaintiff's application is not granted, the Plaintiff will suffer irreparable harm because the sale of the property under a trustee's sale will be disordered and rushed, and will not likely yield the same amount as would be the case if the property were listed, shown by a realtor, and sold under a listing agreement in the current marketplace. Additionally, the failure of the Defendants to provide proper, legal notice is a harm that can never be completely remunerated with money damages. Moreover, it is possible that the public sale through foreclosure will extinguish the equitable rights of the Plaintiff in the property.

7.06    The Plaintiff has no adequate remedy at law because unless the foreclosure is enjoined, the Plaintiff will never have the opportunity he was promised: which was to complete the repairs to the property, to enjoy the fruits of his labors and the benefit of the market, and to have the opportunity to have a reasonable time to refinance the property or list it and sell it on the market, which conditions of the market are excellent.

7.07    Because of the time constraints, there is not enough time to serve notice on the Defendants and hold a hearing on this application. Accordingly, *ex parte* relief should be considered by this Court.

7.08    In addition to the temporary restraining order herein sought, the Plaintiff also prays for temporary injunction following an evidentiary hearing, and following same, that this Court enter an injunction against the Defendants that enjoins them from issuing any notices of foreclosure after the proper notices of default, notice of intent to accelerate, notice of acceleration, and notices of trustee's sales are given *after* a reasonable time has been given to the Plaintiff following the repairs

Copy from re:SearchTX

to the property to either refinance the property or list the property for sale and sell it to a willing buyer at the market price as the Plaintiff was promised.

## VIII.
### JURY DEMAND

8.01    Accordingly, Plaintiff hereby demands a jury and tenders the appropriate jury fee with the filing of this Petition.

## IX.
### CONDITIONS PRECEDENT

9.01    All conditions precedent to bringing the Plaintiff's claim for relief have been performed or have occurred.

## X.
### ATTORNEY'S FEES

10.01   The Plaintiff hereby requests reasonable and necessary attorney's fees necessitated by the Defendants actions under appropriate law.

## XI.
### COSTS AND INTEREST

11.01   Plaintiff requests cost of court. He further prays that any judgment for money damages also award prejudgment interest at the earliest time allowed by law at the highest rate allowed by law. Plaintiff further prays that any judgment bear post-judgment interest at the highest rate allowed by law from the date of judgment until paid.

## XII.
### PRAYER

12.01   Accordingly, Plaintiff respectfully requests that the Defendants be cited to appear and answer and, prior to or following a final trial on the merits, as might be appropriate, that the Plaintiff be awarded a judgment against the Defendants for the following:

Copy from re:SearchTX

a. Temporary restraining order;
b. Temporary injunction;
c. Actual damages;
d. Attorney's fees;
e. Costs and prejudgment and post-judgment interest; and
f. All other relief, at law or in equity, to which they may be justly entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for relief as hereinabove pled.

Respectfully Submitted,

**HARRIS & GREENWELL**
One Shoreline Plaza
800 N. Shoreline Blvd., Suite 2800-S
Corpus Christi, Texas 78401
Telephone:     (361) 883-1946
Facsimile:     (361) 882-2900
Email: agreenwell@harris-greenwell.com

By: _____
     Andrew M. Greenwell
     State Bar No. 00784170

**ATTORNEYS  FOR PLAINTIFF**

Copy from re:SearchTX

## **VERIFICATION**

THE STATE OF TEXAS

COUNTY ~~KLEBERG~~ Nueces (AH)

    BEFORE ME, the undersigned Notary Public, on this day personally appeared CHARLES FOSTER, III who being by me duly sworn on his oath deposed and said that he is a Plaintiff in the above entitled and numbered cause; that he has read paragraphs V, VI, and VII in the above and foregoing document; and that every statement contained therein is within his personal knowledge and true and correct.

_____

CHARLES FOSTER, III

    SWORN AND SUBSCRIBED BEFORE ME on this \_\_\_ day of ~~March~~ April (AH) 2022, by CHARLES FOSTER, III.

_____
Notary Public
State of Texas

ASHLEY HERNANDEZ
Notary Public, State of Texas
Comm. Expires 07-17-2024
Notary ID 132574515

*Foster, et al vs WSFS, et al*
*Orig. Pet., Verified App. For TRO & App for TI*
*Page 15 of 15*

Copy from re:SearchTX

CAUSE NO. _____

| | | |
|---|---|---|
| CHARLES L. FOSTER, III, | § | IN THE DISTRICT COURT |
| | § | |
| vs | § | _____ JUDICIAL DISTRICT |
| | § | |
| WILMINGTON SAVINGS FUND | § | |
| SOCIETY, FSB, PHH MORTGAGE- | § | |
| REVERSE MORTGAGE AND | § | |
| WILLIAM ATTMORE | § | NUECES COUNTY, TEXAS |

### <u>AFFIDAVIT OF CHARLES FOSTER, III</u>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF  NUECES___ | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Charles Foster, III known to me, and, after being duly sworn, stated on his oath as follows:

1.     "My name is Charles Foster, III. I am over the age of eighteen years, of sound mind, and capable of making this Affidavit. I have never been convicted of a felony or a crime involving moral turpitude. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.     I am one of the sons of Charles L. Foster, Jr. Craig K. Foster, who is the Executor of my father's estate, is my brother. Charles L. Foster, Jr. died on November 7, 2018. He left a will which has been probated in Cause No. 2019-PR-00108-1, *In re Estate of Charles L. Foster, Jr.* in County Court at Law No. 1, Nueces County Texas.

3.     The property that my father owned and is the subject matter of this suit, and is known as 440 Bahia Mar, Port Aransas, Nueces County, Texas. Its legal description is surface estate only in and to Lot Thirty-Eight (38), Block One (1), Island Moorings Unit 1, City of Port Aransas, Nueces County, Texas, as shown by the map or plat thereof record in Volume 48 page(s) 142 of the map records of Nueces County, Texas. It is in the Island Moorings subdivision.

**Exhibit A**

Copy from re:SearchTX

4.      During the last few years, I have engaged in a substantial amount of work for the benefit of the reverse mortgage lender in this case. I did so under the direction and based upon the representations and agreements with agents of the service manager at the time, Reverse Mortgage Solutions, whose names were Phil and Ashley. The property had been damaged by Hurricane Harvey, and during that time and in that condition it appeared to all parties involved that it may not have any equity relative to the amounts outstanding. In fact, it was possible the market value was less than the debt. Accordingly, the Estate agreed to convey to me all right, title, and interest in the property, and Reverse Mortgage Solutions agreed to recognize my equitable interest in that property. In my agreement with Reverse Mortgage Solutions, I was to undertake the principal role in obtaining insurance monies, hiring contractors, supervising contracts, maintaining and security the property, hiring professionals, and so forth. I did this and continued to do this, and the property is at the point of almost being completed. I worked to obtain insurance from TWIA, including hiring a lawyer to fight TWIA to obtain increased amounts under the policy for damage to the property. I also hired contractors to make repairs. I also supervised their work. Some of the work I paid for myself. I did all this under the assurances by Phil and Ashley that the reverse mortgage company would not foreclose on the property during the repair work, but would wait until a reasonable time after the repairs were completed so that I could refinance the property with another lender or mortgage company (and pay out the reverse mortgage company) or I could list the property for sale and sale it for market value. I relied upon their promise in performing this work, in working with contractors, and in spending my own money and resources. The property is close to being finished, but is not yet completely repaired. The current owner of the note, Wilmington Savings Fund Society, FSB, and its mortgage servicer, PHH Mortgage—Reverse, have succeeded to that agreement and have benefited from that agreement and my work. The notice of trustee sale, which purports to

*Streamline vs PFC*
*Affidavit of Foster*
*Page 2 of 4*

Exhibit A

Copy from re:SearchTX

foreclose on the property on April 5, 2022, violates and is in direct conflict with the promises made to me by Phil and Ashley, agents with the predecessor mortgage servicer. Phil also promised to put this agreement in writing, but never did so. In any event, I relied upon their representations, this reliance was reasonable and foreseeable—indeed, the reverse mortgage company knew it was happening through its agents Ashely and Phil. To allow the current owner of the mortgage to reap the benefits of my work and the increase in the market would unjustly enrich it since they will have gained a benefit at my detriment because of the work that I did for its predecessor.

5.      Attached hereto as Exhibit 1 is a true and correct copy of some correspondence I received from my brother, Craig K. Foster, who was executor of the Estate of Charles Foster, Jr. I obtained it at the request of Reverse Mortgage Solutions, Inc. It was delivered to Reverse Mortgage Solutions, Inc. on or about the date indicated, that is, on or about July 15, 2020, by downloading it on the losstrak.com website, which is the vehicle by which I was instructed to communicate in writing with Reverse Mortgage Solutions, Inc.

6.      The property 440 Bahia Mar is located in the Island Moorings subdivision. It is approximately 3,291.0 sq. ft. in area. The property was damaged by Hurricane Harvey, and it was my brother's opinion as well as that of the mortgage lender that the property was short less than the amounts owed. As a consequence, the Estate of Charles Foster, Jr. (acting through Craig Foster, the executor) and the mortgage servicer, Properties in Island Moorings similar to 440 Bahia Mar have been selling for between $609/sq. ft. to $693/ sq. ft. Using these figures, the range of market value of 440 Bahia Mar would be between $2,004,219 and $2,280,663. Moreover, these properties have been selling virtually within days of being placed on the market. If the property is foreclosed upon, we stand to lose much of the market value of the house that

Exhibit A

Copy from re:SearchTX

could be realized if we sold it through a realtor. The loss of this equity in the house would be irreplaceable."

      Further, Affiant sayeth naught.

_____
Charles Foster, III

      SUBSCRIBED AND SWORN TO BEFORE ME on the ___ day of ~~March~~ April 2022, by the said Charles Foster, III

_____
Notary Public, State of Texas
My Commission Expires: 07/17/2024

**ASHLEY HERNANDEZ**
Notary Public, State of Texas
Comm. Expires 07-17-2024
Notary ID 132574515

*Streamline vs PFC*
*Affidavit of Foster*
*Page 4 of 4*

Exhibit A

Copy from re:SearchTX

To whom it may concern:

As executor of the estate of Charles L Foster Jr, I wish to confirm that the estate of Charles L Foster, Jr (decd) has no disposition or material possession of the decedent's previous primary residence at 440 Bahia Mar in Port Aransas, Tx.  Should RMS mortgage, or it's assigns including my brother Charles L Foster III, wish to use the insurance claim funds issued to repair, refurbish, sell, invest in or dispose of this asset, the estate has no financial interest or responsibilities of any sort in relation to such efforts, activity or transactions.

Therefore, since RMS asked for my approval to release TWIA insurance claim funds to IRAC, LLC as the contractor doing the repairs that my brother Charles Foster is overseeing for the purpose of financing the purchase of the property, please accept this acknowledgement of the release of insurance funds in your possession for that purpose.

Please confirm that all future interest and/or responsibilities regarding the property at 440 Bahia Mar, Port Aransas, TX are within the sole discretion of Charles L Foster III, and are in no way a part of the Estate of Charles L Foster, Jr. (deceased) inasmuch as all other heirs have no further interest in or association with the property, nor does any current equity exist in that property regarding the estate of my deceased father.

Thank you,


Craig K Foster, Executor
craigfoster@earthlink.net

**Exhibit 1**

Copy from re:SearchTX

CAUSE NO. _____

| | | |
|---|---|---|
| CHARLES L. FOSTER, III, | § | IN THE DISTRICT COURT |
| | § | |
| vs | § | _____ JUDICIAL DISTRICT |
| | § | |
| WILMINGTON SAVINGS FUND | § | |
| SOCIETY, FSB, PHH MORTGAGE- | § | |
| REVERSE MORTGAGE AND | § | |
| WILLIAM ATTMORE | § | NUECES COUNTY, TEXAS |

STATE OF TEXAS   §

NUECES COUNTY   §

## AFFIDAVIT OF ANDREW M. GREENWELL

BEFORE ME, the undersigned authority, appeared **Andrew M. Greenwell**, who, being by me first duly sworn on oath, stated as follows:

"My name is Andrew M. Greenwell. I am over the age of eighteen (18) and have never been convicted of a felony or crime involving moral turpitude. I am of sound mind and am competent to make this Affidavit. I have personal knowledge of the facts testified to herein and they are true and correct.

I represent Craig K. Foster, Executor of the Estate of Charles L. Foster, Jr., deceased, and Charles L. Foster, III, in this litigation.

Attached as **Exhibit 1** is a true and correct copy of an email I sent to attorney William Attmore. I never received a response to the email.

Attached as **Exhibit 2** is a true and correct copy of the Register of Actions relating to Case No. 2019-PR-00108-1, which shows that Reverse Mortgage Solutions, Inc., the mortgage servicer for the reverse mortgage creditor had made an appearance in the probate litigation through lawyer Cheyenne M. Zokaie."

Further Affiant sayeth not.

_____
Andrew M. Greenwell

SUBSCRIBED AND SWORN TO BEFORE ME by the said **Andrew M. Greenwell** on this the 1st day of April 2022, to certify which witness my hand and seal of office.

CINDI ALLEN
My Notary ID # 4298325
Expires May 21, 2022

_____
Notary Public, State of Texas

**Exhibit B**

Copy from re:SearchTX

**From:**     Andrew Greenwell
**To:**       wattmore@rascrane.com
**Cc:**       Cindi Allen; Paralegal
**Subject:**  Foster: Instrument 2010028397
**Date:**     Tuesday, March 29, 2022 11:50:12 AM

Dear Mr. Attmore:

I have been employed by Charles L. Foster, III in regard to the noticed foreclosure of 440 Bahia Mar, Port Aransas, Texas, currently due to occur on April 5, 2022. I would like to explore the possibility of re-scheduling that foreclosure to allow the Estate of Charles Foster, Jr. to sell the property. There is much equity in the property and the market is such that it should not present a difficulty in selling it within the month. A month or two delay would not prejudice you, and would allow for an orderly sale of the property and repayment of your loan.

Because of the short time, I would like to have a response as quickly as possible so that we can pursue whatever other remedies we may need to. It would be cheaper for everyone if these could be avoided.

Sincerely,
Andrew M. Greenwell



**Andrew M. Greenwell**
HARRIS&GREENWELL
One Shoreline Plaza
800 North Shoreline Blvd, Suite 2800-S
Corpus Christi, Texas 78401
(361) 883-1946
(361) 882-2900 fax
agreenwell@harris-greenwell.com
http://www.harris-greenwell.com

    

**Exhibit 1**

Copy from re:SearchTX

# REGISTER OF ACTIONS
## CASE NO. 2019-PR-00108-1

| | | |
|---|---|---|
| In the Estate of Charles L. Foster, Jr. | § § § § § | Case Type: **Probate of Will for Letters Testamentary**<br>Date Filed: **02/18/2019**<br>Location: **CCAL1** |

---

### PARTY INFORMATION

| | | **Attorneys** |
|---|---|---|
| **Applicant** | **Foster, Charles L., III** | **Charles W. Zahn, Jr.**<br>*Retained*<br>361-749-3442(W) |
| **Applicant** | **Foster, Craig** | |
| **Claimant** | **Phillips & Cohen Associates, Ltd.** | |
| **Decedent** | **Foster, Charles L., Jr.** | |
| **Heir** | **All Unknown Heirs** | |
| **Other** | **REVERSE MORTGAGE SOLUTIONS INC** | **Cheyenne M Zokaie**<br>*Retained*<br>682-219-0928(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 02/18/2019 | **Application Filed (OCA)** |
| 02/18/2019 | **Application**<br>*To Probate Last Will And Testament And For Issuance Of Letters Testamentary* |
| 02/18/2019 | **Last Will and Testament**<br>*(copy efiled)* |
| 02/18/2019 | **Service Request Information Sheet**<br>*--Posting and Publication to the Caller Times* |
| 02/19/2019 | **Abstract** |
| 02/19/2019 | **Citation - Probate**<br>*Letters Testamentary* |

| | Served | 02/20/2019 |
|---|---|---|
| Foster, Charles L., III | Response Due | 03/06/2019 |
| | Returned | 02/22/2019 |

| | | |
|---|---|---|
| 02/19/2019 | **Citation - Probate** | |
| | All Unknown Heirs | Unserved |
| 03/20/2019 | **Last Will and Testament**<br>*--Original (walked in by attorney)* | |
| 05/16/2019 | **Claim**<br>*Creditor s Claim filed by Phillips & Cohen Associates, Ltd. on behalf of Citibank, N.A.* | |
| 05/16/2019 | **Claim**<br>*Letter* | |
| 07/26/2019 | **Amended**<br>*Corrected Application to probate Last Will and Testament and for Issuance of Letters Testamentary* | |
| 08/06/2019 | **Probate Hearing**  (1:00 PM) (Judicial Officer Vargas, Robert J.)<br>Result: Held | |
| 08/06/2019 | **Proof of Death and Other Facts** | |
| 08/06/2019 | **Order Probating Will and Authorizing Letters of Testmentary** (Judicial Officer: Vargas, Robert J.) | |
| 08/06/2019 | **Oath**<br>*of Independent Executor Craig K. Foster* | |
| 08/06/2019 | **Notice**<br>*Declination to Serve as Independent Executor/Charles L. Foster III* | |
| 08/06/2019 | **Appointment of Resident Agent** | |
| 08/06/2019 | **Inventory Due** | |
| 10/14/2019 | **Notice**<br>*Of 308.053 Statutory* | |
| 11/14/2019 | **Inventory, Appraisement and List of Claims Filed (OCA)** | |
| 11/14/2019 | **Proposed Order** (Judicial Officer: Vargas, Robert J.)<br>*Approving Inventory, Appraisement and List of Claims* | |
| 12/02/2019 | **Order Approving Inventory** (Judicial Officer: Vargas, Robert J.) | |

---

### FINANCIAL INFORMATION

**Exhibit 2**

Copy from re:SearchTX

|  |  |  |  |  |
|---|---|---|---|---|
| **Applicant** Foster, Charles L., III |  |  |  |  |
| Total Financial Assessment |  |  | | 422.50 |
| Total Payments and Credits |  |  | | 422.50 |
| **Balance Due as of 03/28/2022** |  |  | | **0.00** |

| Date | Type | Receipt | Name | Amount |
|---|---|---|---|---|
| 02/19/2019 | Transaction Assessment |  |  | 378.50 |
| 02/19/2019 | E-file Payment | Receipt # 2019-2598-DCCLK | Foster. Charles L. | (378.50) |
| 07/09/2019 | Transaction Assessment |  |  | 5.00 |
| 07/24/2019 | Payment | Receipt # 2019-1832-PRCLK | CHARLES W ZAHN JR | (5.00) |
| 08/07/2019 | Transaction Assessment |  |  | 12.00 |
| 09/10/2019 | Payment | Receipt # 2019-2401-PRCLK | CHARLES; W; ZAHN; JR | (12.00) |
| 11/15/2019 | Transaction Assessment |  |  | 27.00 |
| 11/15/2019 | E-file Payment | Receipt # 2019-18953-DCCLK | Foster, Charles L. | (27.00) |

|  |  |  |  |  |
|---|---|---|---|---|
| **Claimant** Phillips & Cohen Associates, Ltd. |  |  |  |  |
| Total Financial Assessment |  |  | | 10.00 |
| Total Payments and Credits |  |  | | 10.00 |
| **Balance Due as of 03/28/2022** |  |  | | **0.00** |

| Date | Type | Receipt | Name | Amount |
|---|---|---|---|---|
| 05/16/2019 | Transaction Assessment |  |  | 10.00 |
| 05/16/2019 | E-file Payment | Receipt # 2019-7243-DCCLK | Phillips & Cohen Associates, Ltd. | (10.00) |

**Exhibit 2**

Copy from re:SearchTX